UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MAC, individually, and on
behalf of all others similarly situated,   Case No. 16-cv-13532

            Plaintiffs,   Paul D. Borman
                     United States District Judge
v.
                     R. Steven Whalen
BLUE CROSS BLUE SHIELD OF   United States Magistrate Judge
MICHIGAN and DÜRR SYSTEMS,
INC.,

            Defendants.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND THE
SCHEDULING ORDER TO ALLOW DISCOVERY SPECIFIC TO
PLAINTIFF'S BREACH OF FIDUCIARY CLAIM (ECF NO. 34)
BUT PERMITTING LIMITED DISCOVERY ON CERTAIN THRESHOLD
ISSUES AND AMENDING THE SCHEDULING
ORDER TO ALLOW FOR THAT LIMITED DISCOVERY

Plaintiff has filed a Motion to Amend the Scheduling Order Pursuant to Fed. R. Civ. P. 16(b)(4). (ECF No. 34.) Defendants have filed a Response (ECF No. 35) and Plaintiff filed a Reply (ECF No. 36). The Court has determined that oral argument on the motion will not be necessary and will decide the matter on the parties' written submissions. E.D. Mich. L.R. 7.1(f)(2).

Firs, an important point of clarification. Plaintiff's motion contains multiple overstatements (and misstatements) regarding the rulings of this Court in its June 6,

1

2017 Opinion and Order Denying Defendants' Motion to Dismiss (ECF No. 21). Most notably, and as relevant here, Plaintiff has completely misinterpreted (or misrepresented) the import of the Court's statements in footnote seven of its Opinion, which permitted the Plaintiff to continue to plead *in the alternative* a claim for breach of fiduciary duty under § 1132(a)(3) at this pleading stage. This footnote in no way sought to opine specifically on the facial plausibility of such a claim. As several courts have recognized in permitting plaintiffs to continue to alternatively maintain claims at the pleading stage under § 1132(a)(1)(B) and § 1132(a)(3), it is often difficult at this early motion to dismiss stage to determine as a matter of law that the two claims are in fact duplicative. *See, e.g. Silva v. Metroplolitan Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (noting that "[a]t the motion to dismiss stage . . . it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief," and therefore a "district court should generally not dismiss a § 1132(a)(3) claim as duplicative of a claim for benefits at the motion to dismiss stage of a case.") (internal quotation marks and citation omitted). "*Varity [Corp. v. Howe*, 516 U.S. 489 (1996)] only bars duplicate recovery and does not address pleading alternate theories of liability." *Id*. at 727. Thus, the Court's statements in footnote seven were not intended to suggest any ruling on the viability

of Plaintiff's breach of fiduciary claim, but simply permitted Plaintiff to continue asserting alternate theories of liability until the record could be more fully developed.

Turning to the merits of Plaintiff's request to conduct discovery now on his alternatively-pled breach of fiduciary duty claim, there are unique and potentially dispositive issues in this case that counsel against permitting wide-ranging discovery on this claim at this time. As the Court expressly stated in its earlier Opinion and Order, it did not accept or reject Defendants' argument that the coverage criteria applied to deny Plaintiff's claim were incorporated into the Dürr Plan and are therefore unreviewable Plan terms. The Court expressly deferred ruling on this threshold and potentially dispositive issue pending receipt of a more robust record that would address many important and unanswered questions. Specifically, the Court stated:

> Defendants assert, and reiterated multiple times at oral argument, that Plaintiff must point to a Dürr Plan term, such as "medical necessity," or "illness," that he claims Defendants have misinterpreted in denying his claim for benefits. Defendants distinguish cases such as Egert and Smith as involving just such ambiguous plan terms and assert that here Plaintiff's claim was denied not based on "medical necessity," or some similar ambiguous plan term but based on unambiguous plan terms, i.e. the medical coverage criteria, that Plaintiff concedes he does not satisfy. But of course this distinction presumes that the Court accepts Defendants' contention that the coverage criteria applied to deny Plaintiff's claim were incorporated into the Dürr Plan and were "plan terms" immune from judicial review. In this case, on this record, the Court cannot determine as a matter of law that these coverage criteria were incorporated into the Dürr Plan and became unreviewable plan

3

terms. The Court has no information regarding the who, what, where, and when of the creation of these coverage criteria. Indeed, other than the denial letter sent to Plaintiff, the Court has not seen a document that sets forth these "coverage criteria." Defendants assert that these criteria were incorporated into the Dürr Plan and became unreviewable "plan terms," but absent a more robust record, the Court cannot make that determination. When were these coverage criteria adopted and how were they incorporated into the Dürr Plan? Were they incorporated by amendment? How often have they been revised? Are they available to Dürr Plan participants or need they be? What are the procedures for amending the Dürr Plan and who is authorized to make such amendments?

At the May 2, 2017 hearing, counsel for Defendants knew very little about the coverage criteria that were invoked and applied to deny Plaintiff's claim and could not explain how these coverage criteria were adopted, or whether they were published somewhere or otherwise available to beneficiaries of the Dürr Plan to review. Defendants rely on *Jones [v. Kodak Medical Assistance Plain*, 169 F.3d 1287 (10th Cir. 1999)], *supra*, in support of their claim that these coverage criteria are "Dürr Plan terms," but the district court in *Jones*, and the Tenth Circuit on appeal, gave little insight into the exact plan language they deemed sufficient to incorporate the criteria at issue there into the plan as unreviewable "plan terms." Defendants in this case have simply offered insufficient evidence and argument, on the present record at this pleading stage, to enable the Court to find as a matter of law that the BCBSM Pharmaceutical Committee had "unfettered discretion" to develop, and perhaps modify or amend these coverage guidelines, which then became new "plan terms," immunized from judicial review. *Alexander [v. United Behavioral Health*, No. 14-cv-05337], 2015 WL 1843830, at *8 [(N.D. Cal. April 7, 2015)] (holding that to interpret Jones so broadly to, as a matter of law, convert a plan administrator's creation of internal guidelines into an act immune from judicial review would undermine the very protections afforded by ERISA).

2017 WL 2450290, at *8-9.

Thus, the Court could not, and did not, rule on this threshold and potentially

4

dispositive issue. Accordingly, before the Court permits wide-ranging discovery on Plaintiff's alternatively-pled (and still quite vaguely-defined) fiduciary duty claim, the Court must address this threshold issue. If the coverage criteria were incorporated into the Dürr Plan and are unreviewable matters of plan design, as Defendants argue, it is possible that Plaintiff will be unable to proceed on either of his alternatively pled claims.

Plaintiff asserts, however, in his Statement of Procedural Challenge (ECF No. 37), that the Administrative Record is insufficient to address the specific questions that this Court raised on this threshold issue in its earlier Opinion and Order denying Defendants' motion to dismiss. Accordingly, in the interests of moving this case along as expeditiously as possible, the Court will permit limited targeted discovery on this threshold issue at this time. The Court will then entertain summary judgment motions, based on the administrative record and the outcome of that additional discovery, before considering the need for further discovery on Plaintiff's alternatively-pled fiduciary duty claim. Given the unique issues raised in this ERISA case, the Court finds that this is the best and most judicious use of both the Court's and the parties' time and resources.

Specifically, the Plaintiff has requested, and the Court will permit, discovery related "to issues of the formulation of the coverage conditions, the medical and

scientific support for these conditions, the consistency with which they are applied, and Defendants' bias in denying these benefits." (ECF No. 37, Plaintiff's Statement of Procedural Challenge.) The parties should conduct all discovery necessary to address the multiple unanswered questions posed by the Court in its June 6, 2017 Opinion and Order, and at the hearing on that motion, that bear on this issue. For example, the Court's own research suggests that the specific criteria required to be met for "prior approval" of certain drugs on the Blue Cross and Blue Care Network Custom Drug List, including the specific criteria for the drug Genotropin, are available to plan members online via a link from the Custom Drug List. *See, e.g.,* Blue Care Network, Custom Drug List, Prior Approval and Step Therapy Guidelines, www.bcbsm.com/content/dam/public/Consumer/Documents/help/documents-forms/pharmacy/bcn-prior-authorization-step-therapy-guidelines.pdf. Plaintiff claims that the "guidelines" that were invoked by BCBSM to deny his claim were "secret" and "unpublished" and unavailable to him or any Dürr Plan members at the time of his denial. Counsel for Defendants could not answer the Court's inquiry, posed at the hearing on the motion to dismiss, regarding the public availability of these coverage criteria, nor did Defendants' counsel deem their publication relevant. Whether such published guidelines were available to plan members, or more specifically to the Plaintiff, or whether their publication is relevant to the issue of whether they were

6

incorporated into the Dürr Plan as unreviewable Plan terms, are just some of the issues that would be appropriate subjects of discovery on this threshold and potentially dispositive issue. What Plan language gives rise to the incorporation of these coverage criteria as Dürr Plan terms? How are these coverage criteria expressly incorporated into the Dürr Plan? How are these coverage criteria different from the "guidelines" at issue, and found subject to judicial review for reasonableness, in cases such as *Egert v. Conn. Gen'l Life Ins. Co.*, 900 F.2d 1032 (7th Cir. 1990), *Reilly v. Blue Cross & Blue Shield United of Wisconsin*, 846 F.2d 416 (7th Cir. 1988), *Alexander v. United Behavioral Health*, No. 14-cv-05337, 2015 WL 1843830 (N.D. Cal. April 7, 2015), and similar cases cited by the Court in its June 6, 2017 Opinion and Order? *See also Lynn R v. ValueOptions*, No. 15-cv-00362, 2017 WL 3610477, at *8 (D. Utah Aug. 22, 2017) (distinguishing *Jones* and finding insufficient language in the plan to incorporate certain criteria into the plan as unreviewable plan terms).

The Court will amend the existing Scheduling Order and will permit the parties an additional four (4) months, or until February 28, 2018, to *complete* discovery on these issues. The parties' cross-motions for summary judgment based on the administrative record as supplemented by this discovery will be due on April 2, 2018, and responses due on April 30, 2018. If the parties complete discovery sooner, the Court will consider a request to expedite the briefing on the cross-motions. The Court

also reminds the parties that Magistrate Judge Whalen is available to conduct a settlement conference in this matter at the parties' request and as his schedule permits.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: October 24, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 24, 2017.

s/Deborah Tofil
Case Manager